UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DEMAJIO JEROME ELLIS,

     Plaintiff,

     v.                                CAUSE NO. 3:26-CV-731-GSL-APR

SHANTEL, et al.,

     Defendants.

<u>OPINION AND ORDER</u>

Demajio Jerome Ellis, a prisoner without a lawyer, filed an amended complaint

under 42 U.S.C. § 1983. (ECF 11.) Pursuant to 28 U.S.C. § 1915A, the court must screen

the amended complaint and dismiss it if it is frivolous or malicious, fails to state a claim

upon which relief may be granted, or seeks monetary relief against a defendant who is

immune from such relief. To proceed beyond the pleading stage, a complaint must

contain sufficient factual matter to "state a claim to relief that is plausible on its face."

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009). Because Ellis is proceeding without counsel, the court must give his

allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Ellis is an inmate at Miami Correctional Facility (MCF). His amended complaint

is quite difficult to decipher, but it can be discerned that he claims to have been

transferred from a restricted housing unit to general population in late April 2026. He

claims that since that time, he has been the victim of several sexual assaults because inmates view him as a "snitch." It appears he was moved to another cellhouse in late May 2026, but he appears to claim he is still in danger there. Based on these events, he sues more than a dozen prison staff members, seeking millions of dollars in damages and various forms of injunctive relief.

The Eighth Amendment imposes a duty on prison officials to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). However, "prisons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). Therefore, a failure-to-protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). Instead, the plaintiff must allege that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010). To be held liable, a defendant must have "acted with the equivalent of criminal recklessness, in this context meaning they were actually aware of a substantial harm to [plaintiff's] health or safety, yet failed to take appropriate steps to protect him from the specific danger." *Klebanowski v. Sheahan*, 540 F.3d 633, 639-40 (7th Cir. 2008). The Seventh Circuit has observed that "it's common knowledge that snitches face unique risks in prison." *Dale v. Poston*, 548 F.3d 563, 570 (7th Cir. 2008).

In the amended complaint, Ellis makes broad allegations against "the Defendants" collectively, which is not sufficient to state a claim under federal pleading standards. *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (allegations that referred to "defendants" collectively without connecting specific defendants to specific acts were insufficient under federal pleading standards); *see also Henderson v. Wall*, No. 20-1455, 2021 WL 5102915, at *1 (7th Cir. Nov. 3, 2021) ("[B]y making allegations about large, indeterminate groups of defendants, [the plaintiff] deprived them all of proper notice of what they were accused of doing."). Nevertheless, giving the amended complaint liberal construction, it can be read to allege that Officer Dunn (first name unknown), Officer Reaky (first name unknown), Counselor Allen (first name unknown), former Warden Brian English, Counselor Brabbs (first name unknown), Lt. Shantel, Unit Team Manager Back (first name unknown), Sergeant Platz (first name unknown), Officer Hernandez (first name unknown), Sergeant Hodges (first name unknown), Officer T.J.,[1] Officer Bowsner (first name unknown), Officer Johnson (first name unknown), and Officer Hompharies (first name unknown) had express knowledge that he was likely to be assaulted by other inmates because he had been labeled a snitch, yet they allegedly failed to take any steps to protect him from harm, resulting in several attacks. He will be permitted to proceed further on a claim for damages against these individuals.

---

[1] The court considers that the Indiana Department of Correction may not be able to identify this or other defendants given the way Ellis has identified them; if so, the court will take appropriate steps to assist Ellis in identifying and serving them. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir. 1996); *Sellers v. United States*, 902 F.2d 598, 602 (7th Cir. 1990).

3

His filings can also be read to allege that he is currently in danger, and the current Warden of MCF (whom he identifies as "John Doe #1 New Warden") is responsible for ensuring that inmates within his custody receive protection from other inmates as required by the Eighth Amendment. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). As noted in the original screening order, when he filed this lawsuit, Ellis was already proceeding on a claim for injunctive against the Warden of MCF in another case regarding his ongoing need for protection from other inmates due to his having been labeled a snitch. *See Ellis v. Mauk, et al.*, No. 3:26-CV-279-APR (N.D. Ind. closed July 27, 2026). However, that case was voluntarily dismissed without prejudice in late July 2026. *See id.*

Ellis also alleged in a 2025 lawsuit that he was in danger at MCF. *See Ellis v. English, et al.,* No. 3:25-CV-422-JEM (N.D. Ind. closed Apr. 22, 2026.) He moved for a preliminary injunction, but the motion was denied after the court concluded he was safe in his current housing assignment in the administrative segregation unit. *Id.*, ECF 21. In late March 2026, he filed another preliminary injunction motion, asserting that he was due to be transferred to general population at MCF and would be in grave danger if that occurred. *Id.*, ECF 56. The court ordered a response to that motion, and the Warden submitted evidence that it was Ellis himself who had requested the transfer to general population; the Warden further stated that Ellis was free to remain in the segregation unit if he felt that was necessary for his safety. *Id.*, ECF 58. The case was dismissed a short time later on exhaustion grounds without a resolution of Ellis' assertions. *Id.*, ECF

4

60. It appears from his present filings that he opted to proceed with his request for a transfer to general population.

It is unclear whether Ellis is engaging in gamesmanship or trying to "engineer" an Eighth Amendment violation, which the law does not permit him to do. *See Rodriguez v. Briley*, 403 F.3d 952, 953 (7th Cir. 2005). Nevertheless, because his amended complaint plausibly alleges that he is currently in danger—regardless of the reasons he was transferred back to general population—he will be permitted to proceed on a claim for injunctive relief against the Warden related to his current need for protection from other inmates.

He also sues three nurses, raising allegations about a wide variety of medical and mental health issues—"gender dysphoria," "loose bowels," "body pains," "paranoia," and "anxiety," to name a few—that are allegedly not being adequately treated.[2] Ellis already has a case pending regarding his medical care, including a claim for injunctive relief related to his ongoing need for care for an array of medical and mental health conditions. *See Ellis v. English, et al.*, No. 3:25-CV-1051-GSL-APR (N.D. Ind. filed Dec. 16, 2025.) As he has previously been told, it is malicious for him to use the *in forma pauperis* statute to file a lawsuit that duplicates claims contained in another pending case. *Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003); *see also Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) (federal lawsuit that duplicates claims in another pending lawsuit can be dismissed).

---

[2] To the extent he is claiming the nurses failed to move him to protective custody, there is no plausible basis to infer that a medical provider would have had authority over Ellis' cell assignment.

To the extent he has any claims in his amended complaint pertaining to his medical care that do not duplicate those raised in his other pending lawsuit, they trigger an additional problem: Prisoners cannot combine unrelated claims against unrelated defendants in one lawsuit. *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). As the Seventh Circuit has explained:

> A buckshot complaint that would be rejected if filed by a free person—
> say, a suit complaining that A defrauded the plaintiff, B defamed him, C
> punched him, D failed to pay a debt, and E infringed his copyright, all in
> different transactions—should be rejected if filed by a prisoner.

*George*, 507 F.3d at 607. The Seventh Circuit has urged district courts to be alert to this issue to "ensure manageable litigation" and to prevent prisoners from avoiding the provisions of the Prison Litigation Reform Act (PLRA), including the filing fee and three-strike provisions. *Henderson v. Wall*, No. 20-1455, 2021 WL 5102915, at *1 (7th Cir. Nov. 3, 2021).

The court does not find Ellis' claims regarding his medical care and his claims about the failure to protect him from being harmed by other inmates sufficiently related so as to proceed in the same lawsuit. It would be particularly unworkable to try to litigate these discrete (and sprawling) claims together given that Ellis claims to have a pressing need for protection from other inmates. If he wishes to pursue unrelated

claims about his medical care, he must do so in a separate lawsuit or lawsuits, subject to the usual constraints of the PLRA.[3]

Ellis further states that he is asserting "pendent state law claims," without outlining any specific claim or explaining which of the many Defendants he is suing on state law grounds. His allegations are not sufficient to allege a plausible state law claim against any Defendant under federal pleading standards.

Along with his amended complaint, Ellis filed a motion seeking emergency injunctive relief in the form of a transfer to another facility or placement in protective custody. (ECF 13.) "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

On the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its

---

[3] The court is cognizant that one of his claims relates to his alleged need to be placed on suicide watch. As best as can be discerned, this claim relates to problems he was having in early May 2026, and it cannot be reasonably inferred from his allegations that he had an ongoing need to be placed on suicide watch as of July 30, 2026, the date he filed the amended complaint. Because his medical claims are being dismissed without prejudice, the court does not explore the matter further here.

case." *Id*. at 763 (quotation marks omitted). In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the court must endeavor to assess the merits as "they are likely to be decided after more complete discovery and litigation." *Id.*

On the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Mandatory preliminary injunctions— "those requiring an affirmative act by the defendant"—are "cautiously viewed and sparingly issued." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Additionally, in the prison context, the court's ability to grant injunctive relief is limited. "[I]njunctive relief to remedy unconstitutional prison conditions must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citation and internal quotation marks omitted); *see also Rasho v. Jeffreys*, 22 F.4th 703, 711-13 (7th Cir. 2022) (outlining strict limitations on granting injunctive relief in  correctional setting).

The court also must consider that "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and

to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Likewise, prisoners do not have a constitutional right to the housing assignment of their choice, and where best to house a prisoner is ordinarily a matter committed to the discretion of prison officials. *See Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996).

At present the court only has Ellis' version of events, and it is difficult to determine on this limited record whether he is likely to establish an Eighth Amendment violation in connection with the failure to protect him from harm. In light of the deference owed to prison officials in the management of their facilities and the limitations on granting injunctive relief in the correctional setting, the court will order the Warden to respond before taking action on his request for a preliminary injunction.

For these reasons, the court:

(1) DIRECTS the clerk to correct the docket to reflect that "John Doe #1 New Warden" is the Warden of Miami Correctional Facility;

(2) GRANTS the plaintiff leave to proceed against Officer Dunn (first name unknown), Officer Reaky (first name unknown), Counselor Allen (first name unknown), former Warden Brian English, Counselor Brabbs (first name unknown), Lt. Shantel, Unit Team Manager Back (first name unknown), Sergeant Platz (first name unknown), Officer Hernandez (first name unknown), Sergeant Hodges (first name unknown), Officer T.J., Officer Bowsner (first name unknown), Officer Johnson (first name unknown), and Officer Hompharies (first name unknown) in their personal

capacity for money damages for failing to protect him from being attacked by other inmates in May 2026 in violation of the Eighth Amendment;

(3) GRANTS the plaintiff leave to proceed against the Warden of Miami Correctional Facility in his official capacity for prospective injunctive relief related to his need for protection from other inmates as required by the Eighth Amendment;

(4) DISMISSES WITHOUT PREJUDICE the plaintiff's claims against Sherri Gross, Debra, and Hamania as duplicative and/or unrelated;

(5) DISMISSES all other claims;

(6) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) the Warden of Miami Correctional Facility by email to the Indiana Department of Correction with a copy of this order, the amended complaint (ECF 11), and the motion for a preliminary injunction (ECF 13) pursuant to 28 U.S.C. § 1915(d);

(7) DIRECTS the clerk to fax or email a copy of the same documents to the Warden of Miami Correctional Facility at Miami Correctional Facility;

(8) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Officer Dunn (first name unknown), Officer Reaky (first name unknown), Counselor Allen (first name unknown), former Warden Brian English, Counselor Brabbs (first name unknown), Lt. Shantel, Unit Team Manager Back (first name unknown), Sergeant Platz (first name unknown), Officer Hernandez (first name unknown), Sergeant Hodges (first name unknown), Officer T.J., Officer Bowsner (first name unknown), Officer

Johnson (first name unknown), and Officer Hompharies (first name unknown) at Indiana Department of Correction and to send them a copy of this order and the amended complaint (ECF 11) pursuant to 28 U.S.C. § 1915(d);

(9) ORDERS the Indiana Department of Correction to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent such information is available;

(10) ORDERS the Warden to file and serve a response to the plaintiff's motion for a preliminary injunction (ECF 13) no later than **September 8, 2026**, with supporting documentation, addressing the plaintiff's current need for protection from other inmates and the steps being taken to address that need; and

(11) ORDERS the Warden, Officer Dunn (first name unknown), Officer Reaky (first name unknown), Counselor Allen (first name unknown), former Warden Brian English, Counselor Brabbs (first name unknown), Lt. Shantel, Unit Team Manager Back (first name unknown), Sergeant Platz (first name unknown), Officer Hernandez (first name unknown), Sergeant Hodges (first name unknown), Officer T.J., Officer Bowsner (first name unknown), Officer Johnson (first name unknown), and Officer Hompharies (first name unknown) to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on August 6, 2026

/s/Gretchen S. Lund
JUDGE
UNITED STATES DISTRICT COURT

11