UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DEMAJIO JEROME ELLIS,<br><br>Plaintiff,<br><br>v.<br><br>SHANTEL, et al.,<br><br>Defendants. | CAUSE NO. 3:26-CV-731-GSL-APR |

OPINION AND ORDER

Demajio Jerome Ellis, a prisoner without a lawyer, moves for a preliminary injunction. (ECF 13.) He claims that in April 2026, he was transferred from a restricted housing unit to general population at Miami Correctional Facility ("MCF"), and since that time has been the victim of assaults by other inmates, who view him as a "snitch." (*Id.*) He was granted leave to proceed on a claim for damages against certain prison employees for failing to protect him from these attacks, and against the Warden of MCF for prospective injunctive relief related to his ongoing need for protection from other inmates. (ECF 16.) His emergency motion seeks a transfer to another facility and other relief. (ECF 13 at 1.) The court ordered a response from the Warden, which has now been filed.[1] (ECF 28.)

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of

[1] By operation of the Local Rules, any reply by Ellis was due September 15, 2026. N.D. Ind. L.R. 7-1(d)(2)(B). That deadline has passed and no reply has been received.

persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

On the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of [his] case." *Id*. at 763 (quotation marks omitted). In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the court must make an assessment of the merits as "they are likely to be decided after more complete discovery and litigation." *Id.*

On the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Mandatory preliminary injunctions—"those requiring an affirmative act by the defendant"—are viewed with particular caution and are "sparingly issued." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Additionally, in the prison context, the court's ability to grant injunctive relief is limited.

"[I]njunctive relief to remedy unconstitutional prison conditions must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citation and internal quotation marks omitted); *see also Rasho v. Jeffreys*, 22 F.4th 703, 711-13 (7th Cir. 2022) (outlining strict limitations on granting injunctive relief in correctional setting).

The record reflects that Ellis transferred to MCF in April 2025. (ECF 28-1 at 3.) A few weeks later, he submitted a request for protective custody stating that he had been assaulted by his cellmate twice and that numerous gang members had threatened him. (ECF 28-2.) He was immediately moved to a different cell while prison staff investigated his claims. (*Id.*) While the investigation was ongoing, he filed three more protective custody requests within a period of days. (ECF 28-2 at 3-5.) Prison staff attempted to verify his claims but could not do so. (*Id.*) A staff member noted that despite his claim that he was assaulted twice by his cellmate, he displayed no visible sign of injury. (*Id.* at 4.) He appeared to be showing signs of paranoia, and so he was referred to mental health staff. (*Id.*)

He was then moved to the Administrative Housing Unit ("AHU") pending a full review by the Protective Custody Committee. (ECF 28-2 at 6-7.) Inmates in this unit have no face-to-face contact with other inmates. (ECF 28 at 2.) He remained in AHU until June 2025, when the Protective Custody Committee determined that his claims were without merit. (ECF 28-2 at 2.) He was then moved to a cell in general population. (ECF 28-1 at 1.) A few days later, he submitted another protective custody request

stating he was in danger; he was immediately moved back to AHU and remained there for several months. (*Id.*; ECF 28-2 at 7.)

In February 2026, Ellis asked a casework manager about joining the prison's Addiction Recovery Services ("ARS") program. (ECF 28-3 ¶ 3.) He was told that it would be easier for him to participate if he were in general population. (*Id.*) Ellis asked how he could return to general population and stated he "would sign any waiver if necessary." (*Id.* ¶ 4.) He did not voice any concerns about his safety. (*Id.* ¶ 5.) In order to facilitate his request, he was moved to general population in March 2026 to participate in the ARS program. (*Id.* ¶ 6.)

Later that month, Ellis filed an emergency motion in *Ellis v. English*, 3:25-cv-422-JEM-JD (N.D. Ind. closed Apr. 15, 2026), stating that he was in danger and asking the court to order prison officials to house him in a one-person cell at all times.[2] (ECF 28-4.) On April 1, 2026, the caseworker manager spoke to Ellis about his motion, and he stated that he still wished to participate in the ARS program, but only if he could be guaranteed a single-person cell in the ARS dorm. (ECF 28-3.) Ellis did not claim to be in danger, but commented, "I have issues with bunkies and . . . I am going to do what I have to do but if I am by myself there won't be issues." (*Id.*) Prison staff (as well as legal counsel for the Indiana Department of Correction) considered his request, but determined that per prison policy, he could not be guaranteed a one-person cell while living in general population. (ECF 28 at 3.) Throughout April, May, and June 2026, Ellis

[2] The case was dismissed a few weeks later on exhaustion grounds without any determination related to Ellis' allegations about his safety. *See Ellis*, No. 3:25-CV-422-JEM.

moved several times to different cells in general population. (ECF 28-1.) There is no record of him filing any protective custody requests during this period. (*See* ECF 28-2.)

In late June 2026, Ellis received a conduct report for refusing orders and spitting at staff. (ECF 28-5 at 4.) At a disciplinary hearing held on July 6, 2026, he was found guilty and ordered to serve 180 days in restricted housing. (*Id.* at 1.) Based on a subsequent review of his conduct history, correctional officials determined that Ellis should remain in the restricted housing unit until September 2027. (ECF 28-6 at 6.)

The Eighth Amendment imposes a duty on prison officials to take "reasonable measures" to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). At the same time, "prisons are dangerous places" because "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). Therefore, a failure-to-protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). To be held liable, a prison employee must have "acted with the equivalent of criminal recklessness, in this context meaning that they were actually aware of a substantial risk of harm to [the plaintiff's] health or safety, yet failed to take appropriate steps to protect him from the specific danger." *Klebanowski v. Sheahan*, 540 F.3d 633, 639 (7th Cir. 2008).

Here, the record reflects that the Warden is taking reasonable steps to protect Ellis from harm. He is in a restrictive housing unit where he is in a cell by himself and has no face-to-face interactions with other prisoners. There are no plans to move him anytime within the next year because of his disciplinary history. It is evident that Ellis

would prefer to be somewhere else, such as at another facility or in general population with a guaranteed one-person cell, but prisoners do not have a constitutional right to the housing assignment of their choice. *See Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996). Instead, prison officials must be "accorded wide-ranging deference" on matters related to prison safety and security, including where best to house Ellis in light of his disciplinary record. *See Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Additionally, "[p]rison officials do not violate the Eighth Amendment because the mode of protection they offer does not sit well with a prisoner." *Dale v. Poston*, 548 F.3d 563, 570 (7th Cir. 2008). Rather, if they offer reasonable protection from the threat, they have done their duty." *Id.* The record reflects that officials have done that here.

Therefore, Ellis has not demonstrated a likelihood of success in proving that prison staff are acting with deliberate indifference to his need for protection from other inmates. Nor has he shown that he will suffer irreparable injury if he is not granted emergency relief before his claims are resolved. He is not entitled to the extraordinary remedy of a preliminary injunction.

For these reasons, the plaintiff's motion for a preliminary injunction (ECF 13) is DENIED.

SO ORDERED on September 21, 2026

/s/Gretchen S. Lund
JUDGE
UNITED STATES DISTRICT COURT